1

|  | UNITED STATES DISTRICT COURT |
|---|---|

1                    UNITED STATES DISTRICT COURT

2                   SOUTHERN DISTRICT OF CALIFORNIA

3

```
4    UNITED STATES OF AMERICA,    )
                                  )
5                 Plaintiff,      )     Case No. 20MJ4538-TWR(AHG)
                                  )
6    vs.                          )     San Diego, California
                                  )
7    GUSTAVO LAZCANO-NERIA,       )     Thursday,
                                  )     October 29, 2020
8                 Defendant.      )     10:53 a.m.
     _____)
```

9

10

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE ALLISON H. GODDARD
UNITED STATES MAGISTRATE JUDGE

12

13    APPEARANCES:

14    For the Government:      PAUL BENJAMIN
                               Assistant U.S. Attorneys
15                             880 Front Street
                               San Diego, California  92101
16
      For the Defendant:       Federal Defenders of San Diego
17                             BY:  RYAN W. STITT, Esq.
                               225 Broadway Street
18                             Suite 900
                               San Diego, California  92101
19
      Interpreted by:          Daniel Novoa
20

21

22    Transcript Ordered by:   Federal Defenders

23    Transcriber:             Cameron P. Kircher

24    Proceedings recorded by electronic sound recording;
      transcript produced by transcription.
25

COMPUTER-AIDED TRANSCRIPTION

2

1          San Diego, California - Thursday, October 29, 2020

2                          10:53 a.m.

3          **THE CLERK:**  Calling Matter No. 18, 20MJ4538,

4     U.S.A. vs. Gustavo Lazcano-Neria.

5          **MR. STITT:**  Good morning.  Ryan Stitt, Federal

6     Defenders on his behalf.  He's not present.

7          **MR. BENJAMIN:**  And good morning, your Honor.  Paul

8     Benjamin for the United States.

9          **THE COURT:**  Okay.  And do you waive his appearance?

10         **MR. STITT:**  Yes.  Well, your Honor, I think I need

11    to.

12         I had an appointment with him this morning in the

13    courthouse cellblock to prepare for this afternoon's trial.

14    The Marshal Service did not bring him from the MCC to the

15    courthouse today and indicated that they would not be

16    producing him for trial.

17         I spoke to the legal department at the MCC,

18    specifically a Mr. Cook, who works with Theresa Talplacido.

19    Mr. Cook reported that Mr. Lazcano was not produced by the

20    Marshal Service because he is being held as part of a routine

21    two- or three-week quarantine because he was just booked at

22    the MCC last week.  And that Mr. Lazcano is not experiencing

23    any specific or particularized COVID-related health symptoms.

24    He's not ill in any way that they can discern, and that the

25    MCC will produce him if the Court orders.

COMPUTER-AIDED TRANSCRIPTION

1       And so I'm asking that you order him produced.  I'll

2   meet with him in the cellblock over lunch, and I anticipate

3   being prepared for our trial at 2:30.  If the Court is not

4   inclined to order him produced for court today, my

5   alternative request would be to dismiss the charges, or in

6   the alternative, order his release on bond.  He's been held

7   detained on a misdemeanor charge.

8       **THE COURT**:  All right.  Mr. Benjamin.

9       **MR. BENJAMIN**:  Your Honor, I don't think we need to

10   get to the subsequent two suggestions.  I think it seems

11   perfectly reasonable for the Court to order him produced for

12   trial and produced early so that Mr. Stitt can meet with

13   him.

14       **THE COURT**:  Okay.  Well, I will order that.  It may

15   get me in trouble, but that's fine.  I'll deal with it.

16       But I will order that Mr. Lazcano be produced.  I

17   was serious when I set it on calendar, and I understood that

18   it's not the easiest thing for the marshals or MCC to do, but

19   I think given the charge, he should be able to be tried

20   quickly.  And so I will order that he be produced this

21   afternoon.

22       If that's not reasonably possible, I am also

23   available tomorrow afternoon.  I don't know if that makes a

24   difference to you, or do you want to just -- we're just going

25   to order it for today and that's what we're going to do.

4

1        **MR. STITT:**  My request would be one day at a time,

2    your Honor.  I am in trial already tomorrow.

3        **THE COURT:**  Okay.

4        **MR. STITT:**  But I will -- I do not want my schedule

5    to be the impediment, so if I need to, I will figure

6    something out for tomorrow.

7        But can the Court please specifically order that

8    Mr. Lazcano be produced as soon as reasonably possible in the

9    cellblock for me to have my what was scheduled for 8:00 a.m.

10    this morning meeting with him, so that I can meet him, review

11    the discovery with him and be prepared for our 2:30 trial?

12        **THE COURT:**  Yes, I will order that.  So he does need

13    to be produced as quickly as reasonably possible because he

14    needs to have the advice of counsel before he starts trial at

15    2:30.

16        **MR. STITT:**  Thank you.

17        **THE COURT:**  All right.  Thank you, everyone.

18        **MR. STITT:**  Thank you.

19        **MR. BENJAMIN:**  Thank you, your Honor.

20    (Recess, 10:56 a.m. to 1:14 p.m.)

21        **THE CLERK:**  Re-calling Matter No. 18, 20MJ4538,

22    U.S.A. vs. Gustavo Lazcano-Neria.

23        **MR. STITT:**  Good afternoon.  Ryan Stitt, Federal

24    Defenders, on behalf of Mr. Lazcano.  He's appearing by video

25    teleconference.

1          **MR. BENJAMIN:**  And good afternoon, your Honor.  Paul

2     Benjamin on behalf of the United States.

3          **THE COURT:**  Okay.  So we have this case scheduled

4     for trial this afternoon.  Here is my understanding of where

5     the world sits right now.

6          We don't really see this issue with the defendants

7     who are brought in for trial in felony cases because they

8     have been in custody for a while.  But Mr. Lazcano was

9     arrested on October 17th --

10          **MR. BENJAMIN:**  18th, your Honor.

11          **THE COURT:**  18th.  Well, he was booked into MCC --

12          **MR. STITT:**  October 19th.

13          **THE COURT:**  -- October 19th.  Okay.  So he's been

14     there for ten days, so he's still in quarantine there.  And

15     it's my understanding that it would break the quarantine

16     policy to bring him physically into court today for a trial,

17     but he could appear by videoconference.

18          Mr. Price is here from the Marshal's office to make

19     sure I'm understanding that correctly.  Is that correct,

20     Mr. Price?

21          **MR. PRICE:**  That's correct, your Honor.

22          **THE COURT:**  And what day does he get off of

23     quarantine?

24          **MR. PRICE:**  He gets released, pending the current

25     medical tests, on the 3rd of November.  If he tests negative

1    throughout, the 3rd of November is the soonest he'll get out.

2            THE COURT:  And do you know like how many -- what

3    does it mean, like the testing, like what the testing would

4    be?

5            MR. PRICE:  So we reached out to the MCC medical

6    department and their medical unit, which is -- bear with me.

7    I don't have my glasses.

8            So Ms. Kimura, she's the medical representative for

9    MCC.  And I'll just read you what she wrote back to us

10   verbatim.  The inmate intake was on 10/19/20.  He was given a

11   Rapid Abbott test that was negative.  This does not medically

12   clear the inmate.  He will go into intake quarantine for 14

13   days.  On Day 14, 11/3/20, the inmate will be tested by a

14   send-out COVID-19 test.  If this test comes back negative,

15   then the inmate will be cleared to go to court.  That's it

16           THE COURT:  So does that mean that he would -- do we

17   have any sense of what day would be his first clearance?

18           MR. PRICE:  I don't have anything other than that.

19   That's not their protocol, I don't think, to test them in

20   between those 14 days.

21           THE COURT:  Right.

22           MR. PRICE:  So if he clears those 14 days with no

23   symptoms, then they test him again.  And if he's clear from

24   that, then they, you know, make him available to come to

25   court.

7

1        **THE COURT:**  Okay.  Because what I'm trying to

2   ascertain is -- I think there is a choice.  From the Court's

3   perspective, there is two things I'm trying to balance.

4   Obviously, the due-process rights of Mr. Lazcano.  It's very

5   important to the Court.

6        **THE INTERPRETER:**  I'm sorry, your Honor.  May I ask

7   you to use the microphone.

8        **THE COURT:**  The Court is trying to balance a number

9   of things.  What comes first is the defendant's due-process

10  rights.  I set this case for a short trial given the charge

11  when I had Mr. -- we had a status hearing after Mr. Lazcano's

12  initial appearance, and he was -- I granted the government's

13  motion for detention.

14       When I set it for a short trial, I didn't

15  contemplate that I might be upending quarantine rules, but

16  now I need to take that into consideration as well.  I also

17  didn't know that Mr. Stitt would be able to be ready for

18  trial as quickly as he was, and I appreciate that.

19       So we set the case for trial this afternoon.  There

20  is a couple of ways we can proceed.  I don't believe he's

21  entitled to a trial under the law within a certain number of

22  days.  I think he's supposed to be tried as soon as it's

23  practicable because we're not talking about a felony and I

24  don't think the Speedy Trial Act applies, but you can correct

25  me on that.

8

1           In order to proceed today and not jeopardize the

2     health of other people, including Mr. Lazcano, because he'll

3     be exposed to even more people if he's brought to court

4     today, not to mention the marshals, court personnel, we can

5     do a VTC, a videoconference trial today.  I can't do that

6     under Rule 43 without Mr. Lazcano's written consent.

7           I understand that seems hard to do right now, but I

8     have a feeling that if we need to, we can get a piece of

9     paper under him and have him sign it if he's willing to

10    consent; so I think we can cross that bridge if we need to.

11          Otherwise, I think I can set -- I will set the -- a

12    trial for the first date he can be available.  It would be

13    nice to know, or at least have a better sense if it's

14    November 3rd or if it's November 4th.  But I will certainly

15    make my calendar available.  And I'll move civil cases around

16    for that to happen, because I think that's the right thing to

17    do.  So that's where I'm coming from.

18          And now I'll hear from you first, Mr. Stitt, and

19    then I'll hear from you, Mr. Benjamin.

20          **MR. STITT:**  Yes, your Honor.  I think the Court --

21          **THE COURT:**  Hold on.  Real quick.  You can stay

22    seated today, because it's much easier for everyone to hear

23    in the microphone if you can stay seated and pull it closer.

24    You'll get use to it.

25          **MR. STITT:**  Yes, your Honor.

9

1           I think that the Court needs to add two additional

2     options to the list of considerations that it's considering,

3     and one is a revisit -- revisiting bond.  The other is

4     dismissing Mr. Lazcano's case for the government failing to

5     be able to present him timely for trial.

6           The Court is correct that the statutory Speedy Trial

7     Act does not apply to Mr. Lazcano's case.  It applies to

8     felonies.  He's charged, as we all know, with a petty

9     misdemeanor offense.  He does have a constitutional Speedy

10    Trial Right to a prompt trial, although I will concede that

11    that right is likely not implicated by a delay of a week or

12    two, as the Court is likely considering.

13          I think that you're right that the pinnacle concern

14    needs to be due-process concerns.  And I have really serious

15    due-process concerns with a VTC trial and in my ability to

16    prepare with Mr. Lazcano.

17          I met with him for one hour today, from 12 o'clock

18    to 1 o'clock, over VTC.  We were able to review none of the

19    discovery, none of the videos that have been produced in his

20    case, and really only had a substantive conversation about

21    what would happen today at this hearing, not really getting

22    towards the more complicated issue of trial, defenses,

23    whether he would like to testify or not, all of the things

24    that I think are really his more important, core

25    constitutional rights.

10

1          And so preparing over VTC is challenging, and I

2     think that having his trial over VTC would be even more

3     challenging.  I won't be able to communicate with him at

4     counsel's table.  He won't be able to see witnesses

5     personally here.  And I just don't see that as being a viable

6     option if we keep due process as the pinnacle concern in his

7     case.

8          Mr. Lazcano, as the marshals indicated, has tested

9     negative for the Rapid test.  He has been at the MCC at this

10    point for ten days.  Most people are symptomatic in roughly

11    five.  I understand that we're doing quarantine for two

12    weeks, which is prudent and good, and in no way am I trying

13    to argue or say that the marshals and the court's efforts to

14    keep us all safe are wrong.

15         But when people are charged, as the government chose

16    to do so in this case, with a misdemeanor illegal entry case,

17    the government moved to detain Mr. Lazcano when the

18    presumption is that he be granted bond, the Court ordered --

19    granted that motion and ordered him detained, then that --

20    that procedurally upends a series of otherwise orderly rules

21    that had been put in place with respect to quarantine, with

22    respect to the ability to prepare and to move forward.

23         And so Mr. Lazcano is not prepared to proceed by VTC

24    this afternoon for a multitude of reasons, not the least of

25    which is we haven't prepared.  And he can't sign a form that

1    I haven't reviewed with him, drafted or anything.  And so

2    we'd like to have an in-person trial.

3         And that can still be accomplished I think tomorrow

4    afternoon.  We could order Mr. Lazcano present in person.  I

5    will meet with him in the cellblock.  We will go over all the

6    videos.  I have them on my computer, ready to go.  All trial

7    exhibits are done.  The government has produced discovery.

8    I'm confident that if I meet with him starting at 12:00 or

9    12:30 tomorrow in person, and we can watch the videos and

10   review the documents, that we'll be ready to go by the

11   Court's 2:30 typical start time.

12        If the Court is not inclined to order that and to go

13   forward in person tomorrow, then we need to revisit releasing

14   Mr. Lazcano.  I've spoken to my office.  The Bail Project, as

15   well as another bond organization that has funds -- funding

16   through Federal Defenders will provide Mr. Lazcano a place to

17   stay for whatever he needs in the short term.

18        I've spoken before to his cousin who lives in

19   Phoenix and is a legal permanent resident.  He also has

20   family in the Pacific Northwest as well as a friend in

21   Los Angeles, who we also think who could provide housing.  I

22   didn't follow up with those leads, given the Court's

23   detention order, but I certainly can do that again.

24        And the Court I think can order Mr. Lazcano

25   released.  He can stay locally until he has a location where

12

1    he can stay safely that Pretrial Services approves.  And by

2    releasing him, we similarly release the marshals, the

3    government and everyone else from these onerous time

4    restrictions that -- and concerns about getting someone to

5    trial very quickly when they are in custody facing a petty

6    misdemeanor offense.

7         And I think -- you know, the trial, even if the

8    government is successful in the trial, the likely sentence

9    that the Court would impose for Mr. Lazcano is very low, if

10   not no more time in custody, which is why a delay, a

11   substantial delay in his trial just further prejudices him by

12   forcing him to serve time in jail that the Court might not

13   otherwise order.

14        The Court certainly could order or impose a

15   lengthier sentence if he's convicted, but you would have the

16   opportunity to make that choice at the sentencing if he's

17   convicted, instead of having the choice made in advance of

18   trial and forcing him to serve a sentence that you might not

19   otherwise impose.

20        I think that Mr. Lazcano has no immigration history

21   whatsoever.  He's never been deported.  His sole conviction

22   is a time-served sentence from 16 years ago in Delaware.

23   And, you know, I think that he's definitely someone the Court

24   can release on bond, especially when the presumption is

25   release when someone is charged with this type of offense.

13

1          I represent now some close to 20 defendants in

2     similar cases.  Mr. Lazcano's immigration and criminal

3     history is similar to many, and all of them are released on

4     bond.  And ordering him detained for what could be a lengthy

5     period of time, I think is challenging and it would violate

6     his right to due process, which I think the Court is right to

7     hold as the pinnacle or the first concern.

8          And so my request would first be to release him on

9     bond, to set his case for a motion hearing in -- whenever the

10    Court is available in the ordinary course and a trial from

11    there.  If the Court is unwilling to set bond and continues

12    to order him detained, then I would request that he be

13    present in the cellblock tomorrow at lunch.  We'll prepare

14    for trial and proceed tomorrow afternoon.  I understand the

15    Court at least earlier indicated that that was available.

16          I will conclude -- I'll finish my trial in the

17    morning, go to the cellblock and do this in the afternoon,

18    and that's fine.  But sending -- waiting until the 3rd, until

19    they test him again and they send it out, and then it gets

20    read whenever it gets read and it comes back, doesn't put us

21    in a great position for when we'll know he'll actually be

22    clear to come to court.

23          **THE COURT:**  So Mr. Price, could you clarify -- could

24    you try to get some clarification on exactly when he'll be

25    cleared to be taken out of quarantine?  Is it just on the

COMPUTER-AIDED TRANSCRIPTION

14

1    expiration of the 14 days, or does it have to -- does the

2    November 3rd test have to come back, and what the deadline --

3    what the time line is for that?

4            **MR. PRICE:**  Right.

5            **THE COURT:**  That would be helpful.

6            **MR. PRICE:**  Yes, your Honor.

7            **THE COURT:**  Okay.  Let me hear from you,

8    Mr. Benjamin.

9            Let me say this first, though.  I am not inclined to

10   change my decision on detention, and here is why:  First of

11   all, the Bail Reform Act factors don't I don't think include

12   time to trial or this type of difficulty.  That's not really

13   even a factor I can consider.

14           And when I considered whether or not to set pretrial

15   release conditions for Mr. Lazcano, the most important thing

16   in my mind was his significant ties to Mexico.  His wife and

17   children are there.  They are 4, 17 and 19.  And I think that

18   presents a substantial risk of flight.

19           Oftentimes if someone's most close family members

20   are here in the United States, I think there is a lot of

21   reasons to expect that this is where they want to be.  But

22   with basically his life in Mexico, I still find that there is

23   a substantial risk of flight that can't be mitigated even for

24   a short period of time.

25           **MR. STITT:**  But he is -- he's coming here.  I mean,

15

1    he has family -- I mean, you're not considering any of the

2    family factors that he has here.  You're not considering --

3    the Court is not considering his family in Phoenix.  The

4    Court is not considering his close friend in Los Angeles.

5    The Court is not considering his extended family in the

6    Pacific Northwest.

7         And I think the Court is correct to consider his

8    nuclear family being in Mexico as a draw to Mexico, but to

9    say that because he has family in Mexico means that the Court

10   should order him detained in this kind of case I think

11   presents a scenario where almost everyone would be ordered

12   detained.

13        I mean --

14        **THE COURT:**  That's not actually true.  I mean, if

15   you have your life in Mexico, and you're facing potential

16   custody time here, the risk of flight is that you'd rather

17   just go back and avoid everything.  He didn't come here to be

18   in custody.  He came here hoping he would not get in custody

19   and be here for some other reason.

20        **MR. STITT:**  Right.

21        **THE COURT:**  But the question now is, now that he's

22   facing criminal charges, is he likely -- is there a

23   substantial risk of flight given that his life is in Mexico,

24   and I think there is.

25        **MR. STITT:**  He didn't flee in the 2004 case.  There

1    is no failures to appear on his record.  He has absolutely --

2    he has no other arrests, no immigration arrests whatsoever.

3         And I think that the presumption is that the Court

4    set bond, and the government needs to show that -- meet I

5    think a relatively high burden that he's going to flee.

6    Especially in a petty misdemeanor offense, I do think that

7    the Court needs to consider at least for due process, if not

8    under the Bail Reform Act, the fact that delaying his trial

9    means that he will be serving time in jail the Court might

10   not otherwise order for his sentence.

11        I mean, the whole bail structure is written such for

12   offenses that are like -- you know, like the felony offenses,

13   where people are going to spend potentially long periods of

14   time in jail, and so there isn't a specific factor that

15   contemplates, well, the defendant if not granted bail would

16   serve longer in jail than he otherwise would if he was given

17   bail.  But that's exactly the circumstance that we're

18   presented with in Mr. Lazcano's case.

19        And so whether it's a specifically enumerated factor

20   in the Bail Reform Act or just generally like how do we set

21   this system up fairly so it gives him an opportunity to

22   prepare for his defense, be present for his trial and to not

23   have to pay for those rights in extra days in jail, then,

24   yes, I think we absolutely need to factor that in.

25        So --

1    **THE COURT:**  So I appreciate your argument, but I'm

2    not inclined to move on that issue.  And I wanted to let you

3    know that, Mr. Benjamin, before I hear from you.

4    **MR. BENJAMIN:**  Thank you, your Honor.

5    And I would like to correct one representation about

6    his prior case.  He has been out to warrant in Delaware since

7    2004, so there is an active probation warrant for him.  He

8    has been a fugitive now for 16 years.

9    But leaving aside the bail issues since I understand

10   the Court's tentative is to not re-litigate bail at this

11   point, the -- I don't believe that it's wise to order him

12   released from MCC's mandatory quarantine early.  We are in

13   the middle of a pandemic.  This is a public health emergency.

14   MCC is trying, as the Court noted, to protect not just other

15   people but the defendant and to protect other people from

16   being infected by the defendant.

17   Mr. Stitt is correct that if people are going to be

18   symptomatic with COVID-19, that often presents itself within

19   the first five to ten days.  However, it's commonly known at

20   this point that many people are asymptomatic with COVID-19

21   and that people can and are infectious while asymptomatic

22   with COVID-19.

23   So the fact that MCC is taking reasonable public

24   health precautions to ensure both that the defendant doesn't

25   get sick by being exposed to people and that other people are

18

1   not exposed to the defendant while he's infectious, that is a

2   reasonable public health measure, and that is not something

3   that the Court should overthrow by ordering him produced

4   during that quarantine period.

5          Now, turning to the speediness of trial and the

6   defendant's constitutional rights.  I think it's important to

7   note that this is an exceedingly rapid trial that's set at

8   this point.  I spoke to several people in my office, several

9   people who have been there for decades.  No one has ever

10  heard of a trial being set within a week after arrest, and

11  that includes back before the pandemic when we had many

12  in-custody 1325 defendants.  In-custody misdemeanor trials

13  were frequently set for a month after arrest.

14         So there is -- there is simply no basis to conclude

15  that following that procedure, or even having a time line

16  that is shorter than average, but saying we're going to do

17  trial two weeks after arrest or three weeks after arrest,

18  still much sooner than other defendants charged with the same

19  crime had their trials set while they were in custody earlier

20  this year, I don't think there is any basis to conclude that

21  that would be a constitutional violation.

22         Mr. Stitt is correct, the statutory speedy trial

23  rights do not apply in this case, and there is simply no

24  reason to conclude that the Constitution demands that someone

25  be set for trial within the first week or two of their

1   arrest.

2           **THE COURT:**  Thank you.

3           So here is what I can -- I'm going to hear from you

4   again, Mr. Stitt.  But do you have any update, Mr. Price?

5           **MR. PRICE:**  Yes, your Honor.

6           **THE COURT:**  You can sit down.  That way we'll hear

7   you better.  It's so unusual for people to sit down, but it's

8   totally fine.

9           **MR. PRICE:**  Once the results are read, that

10  secondary test would be available for either the 4th or the

11  5th.  That's the word that we just got back.

12          **THE COURT:**  Okay.  Let me tell you what I have on

13  the 4th and 5th.  The 4th is a little bit odd.  I could start

14  at 10:00 and I need to be done by 1:00, so we'd have to work

15  through the lunch hour.

16          On the 5th, I could do the morning.  I have the full

17  morning available and the afternoon.  I think it's probably

18  safer at this point to go with the 5th just in case.

19          **MR. STITT:**  Sorry.  When would the time be on the

20  5th?

21          **THE COURT:**  On the 5th, I've got all day.  Don't

22  take all day.  I mean, if you need to, you need to.

23          **MR. STITT:**  No, your Honor.  I don't need all day.

24          The 5th would certainly work.  I need to meet with

25  him.  I mean -- and that's part of the issue.  And so I think

20

1    either -- you certainly -- you can -- you know, if you order,

2    I will go to the MCC and meet with him.

3           But I think that that's a tough order to give since

4    the Court at this point at least is unwilling to have the

5    marshals go and get him and bring him here, but -- during the

6    quarantine, but not send me.  I guess I can meet with him in

7    the cellblock at 8:00.

8           **THE COURT:**  Okay.  Here is -- here is one way --

9    there is a couple ways we can do that.  You can see about

10    meeting on the 4th.  Probably be even better to meet the day

11    before.  If it's not possible, we can start trial at 10:00,

12    and then you can meet with him at 9:00 --

13           **MR. STITT:**  Okay.  I --

14           **THE COURT:**  -- on the 5th.

15           **MR. STITT:**  Yes, your Honor.  I would like to try to

16    meet with him on the 4th, if possible, instead, because I

17    don't think an hour will -- I just don't -- I don't think --

18    I think that that perhaps presents -- puts us in a position

19    where he wouldn't be ready, or we would need to continue it

20    again, which obviously is not desirable.

21           **THE COURT:**  And let me ask you this:  Are you able

22    to meet with him on the phone?

23           **MR. STITT:**  I can but the -- all the appointments

24    for next week are already booked.

25           **THE COURT:**  Right.

21

1      **MR. STITT:**  I have no reasonable belief or

2   expectation that I can set up a phone call.  I set up a phone

3   call last time with him.  It took four days.  And, you know,

4   I don't -- I don't -- I can't reasonably assure you that I

5   would be able to meet with him on the phone.  I'll certainly

6   try.

7         **THE COURT:**  Right.

8         **MR. STITT:**  But I don't know.  That's, again,

9   hard.

10        **THE COURT:**  No, I understand that.  What I'm saying

11   is if you can meet with him for sure in person on the 5th

12   before he comes in for trial, it's not ideal, it's not

13   perfect, but you can meet with him on the phone in the

14   meantime so that you wouldn't be just restricted to that.

15   Perhaps that would be something that works.

16        **MR. STITT:**  I hope so, too.  I certainly am trying

17   that.  That's a given, that that's something I'll try.

18        I -- it's complicated also by the fact that I'm in

19   trial almost every day between now and then, so it's not like

20   I have a lot of time to sit by the phone and wait for him to

21   call.  And it's hard to give the MCC like specific times,

22   like he must call me at 12:15 to 12:30 or something like

23   that; and that's tough for them.  So I will do my very best.

24        **THE COURT:**  Okay.  Is there anything that you need

25   to tell him now about trying to come up with a time to call?

22

1       **MR. STITT:** Your Honor, I'll -- I don't know what

2 the Court is planning to do this afternoon, but if you don't

3 have court in here, I'll use the videoconference to meet with

4 him.

5       **THE COURT:** Let me -- I don't -- is that possible,

6 Mr. Price?

7       **MR. PRICE:** Sure. We can leave him right where he's

8 at right now.

9       **THE COURT:** I don't have an objection to that.

10       **MR. STITT:** I have an interpreter here.

11       **THE COURT:** Okay. I won't be here. I think that's

12 the idea.

13       **MR. STITT:** That's preferable.

14       **THE COURT:** So that -- I think that's what we'll do.

15 You can speak with him -- you can continue to speak with

16 Mr. Lazcano.

17       We're going to continue the trial to November 5th at

18 10:00 a.m.

19       **MR. STITT:** I assume that works for you?

20       **MR. BENJAMIN:** Yes, your Honor.

21       And, your Honor, just a thought in terms of

22 Mr. Stitt being able to meet with him. Does the Court have

23 availability the afternoon of the 5th? Because if we did an

24 afternoon trial, he would have more time to meet with him.

25       **THE COURT:** I do. And that's another option. But I

1    will say that I think this is a unique opportunity.  He's

2    here.  We have VTC.

3         **MR. STITT:**  I will stay here until someone kicks me

4    out.

5         **THE COURT:**  But I can't guaranty that if we have an

6    afternoon trial, they are not going to let you meet with him

7    in the tank necessarily for three hours.  I don't know how

8    that works.  I don't know enough to be confident in that.

9         **MR. STITT:**  I think I'm confident that Mr. Price and

10   I can work that out.

11        **THE COURT:**  Okay.

12        **MR. STITT:**  And I also don't think I really need

13   three hours with him.  But it's also -- it takes a while to

14   get in and for him to get there and it -- all of those things

15   tend to eat up time on the back and the -- you know, the

16   sides.

17        **THE COURT:**  And the one thing I know about this

18   process is that I really don't know much about it, so it's

19   hard for me to step in and say what people should be doing

20   and shouldn't.  So I will rely on you to work, understanding

21   their resources and what everyone is dealing with right now.

22        So what time do you want to start trial on the 5th,

23   Mr. Stitt?

24        **MR. STITT:**  Your Honor, 10:00 a.m. is fine.

25        **THE COURT:**  10:00 a.m.  Okay.

1          Now, the last thing I want to talk about while

2     you're here is motions.  I had kind of thrown out -- I

3     understand defendant wants to make some motions.

4          One idea I had in trying to make it easier for

5     everyone is if you could make a joint motion; in other words,

6     so that the government can just essentially say something

7     along the lines of, the defense moves based on these grounds

8     as stated in these other cases.  You can rely on all your

9     briefing in other cases, the government can object, and

10    incorporate its briefing from other cases.  And then I'll

11    just issue an order based on that.

12         We do that all the time in civil cases, but -- even

13    when it's a contested issue, but it's a different thing for

14    criminal.

15         **MR. STITT:**  I thought we filed that on Monday.

16         **THE COURT:**  I didn't see it.

17         **MR. BENJAMIN:**  I do know that Mr. Stitt and I

18    prepared one.  I thought we had filed it.

19         **MR. STITT:**  I thought it was filed.  Maybe I filed

20    it in the wrong case.

21         **THE COURT:**  No.  I need to check.  I usually check

22    on my --

23         **MR. BENJAMIN:**  I could have sworn I had an e-file

24    notice on it, but I have a lot of cases with you; so it could

25    have been a different case.

1       **THE COURT:**  Hold on.  Let me just check, because I

2   thought I checked.  I'm on CVB.  Oh, my daily filing list is

3   pretty long.

4       That's fine.  I'll get my order out before trial

5   then.  Let me just check and make sure I have it.

6       (Brief pause in proceedings.)

7       **THE COURT:**  Okay.  I've got it.  I will take a look

8   at it.  I'll use this afternoon to get it done.

9       **MR. BENJAMIN:**  Thank you.

10      **MR. STITT:**  Thank you, your Honor.

11      There is one issue that perhaps we can address with

12  respect to the motions.

13      At the time that was filed, I had not been able to

14  listen to Mr. Lazcano's post-arrest statement and represented

15  in the motion that I hadn't been able to do that yet.  I have

16  listened to it now and spoken to Mr. Lazcano briefly about

17  the issue, and I do see a challenge to *Miranda* being

18  forthcoming.  And I can try to do that in writing in advance

19  of the 5th if I'm able to talk to Mr. Lazcano as I expect to

20  a little bit more today.

21      I do not expect to have a signed declaration from

22  him, but I could certainly represent that -- like, what our

23  argument is so that the court is aware and the government.

24  And I don't know, that's the best I perhaps could do.  I'm

25  not sure what you would prefer.

1          **THE COURT:**  Well, you could always -- I mean, just

2    make your argument.  Because normally what I do in the 1325

3    cases in the past is I just save all that for trial.  That

4    being said, it always helps I think for you to give me kind

5    of a clue-in before we get in.  And so if you want to file

6    something, you certainly can.

7          **MR. STITT:**  Okay.  I will try to do that.

8          **THE COURT:**  Okay.  Otherwise, we'll -- you can make

9    your arguments at trial.

10          **MR. STITT:**  Thank you.

11          **THE COURT:**  All right.  Anything else?

12          **MR. BENJAMIN:**  Not from the government, your

13    Honor.

14          **THE COURT:**  Okay.

15          **MR. STITT:**  Thank you very much.

16          **THE COURT:**  A hearty thank you to everyone here.  I

17    really appreciate it.

18          **MR. BENJAMIN:**  Thank you, your Honor.

19          (Proceedings concluded at 1:43 p.m.)

20                         -- oo0oo --

21          I certify that the foregoing is a correct transcript

22    from the electronic sound recording of the proceedings in the

23    above-entitled matter.

24    /s/Cameron P. Kircher            12-3-20
      Transcriber                     Date

25